# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 24-1928V

|  |  |
|---|---|
| YEJI KIM, | Chief Special Master Corcoran |
| Petitioner, | Filed: March 24, 2026 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Alison Haskins, Siri & Glimstad, LLP, Aventura, FL, for Petitioner.*

*Ryan Nelson, U.S. Department of Justice, Washington, DC, for Respondent.*

**FINDINGS OF FACT**[1]

On November 21, 2024, Yeji Kim filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine received on December 29, 2023. Petition at 1-9. The case was assigned to the Special Processing Unit of the Office of Special Masters.

The parties were unable to settle the claim (ECF Nos. 13-20). Respondent now asserts that Petitioner has not established that her shoulder pain began within 48 hours

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

of vaccination. Respondent's Rule 4(c) Report at *4-7 (ECF No. 21). For the reasons set forth below, I find that this SIRVA Table element has been satisfied.

## I.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30,

1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II.    Finding of Fact

I make these findings after a complete review of the record, including all medical records, testimonial evidence, Respondent's Rule 4 Report, and additional evidence filed. Specifically, I highlight the following evidence:

- The vaccination record, documenting that Petitioner received a flu vaccine in her left deltoid on December 29, 2023. Ex. 1 at 1.

- The record of Petitioner's April 2, 2024 appointment with orthopedist Gregory Galano, M.D., reporting a three-month history of left shoulder pain. Ex. 3 at 8. Petitioner explained that she had received a vaccine in that arm on December 31, 2023 (slightly misstating the date of vaccination), and that the following day she experienced left arm tenderness and difficulty with motion. *Id*.

- The record of Petitioner's April 4, 2024 left shoulder physical therapy evaluation. Ex. 6 at 43. Petitioner reported that her pain "started 3 mos ago when she got an influenza vaccine. She noted severe pain right after that did not really go away." *Id*.

- Petitioner's declaration stating that when she awoke the day after vaccination, her left shoulder was "extremely tender," and the pain worsened throughout the day. Ex. 8 at ¶ 6. She used ice and over-the-counter medications and rested her arm. *Id*. Her arm pain and stiffness continued the next day and beyond, and she needed help from co-workers to perform job duties. *Id*. at ¶¶ 7-8. She found it hard to believe that vaccination could cause so much ongoing pain, and initially thought her symptoms might be due to differences in vaccines in the United States (Petitioner had moved here from another country less than a year before vaccination). *Id*. at ¶ 9. She was also hesitant to seek medical treatment due to uncertainty about her health insurance coverage and a language barrier. *Id*. at ¶ 10. She found a doctor who spoke her native language, but he was not covered by her health insurance. *Id*. Eventually, it became clear that her pain was not subsiding, and she made an appointment. *Id*. at ¶ 12.

These medical records and testimonial evidence support a finding that Petitioner's shoulder pain likely began within 48 hours of vaccination. Respondent's contention to the contrary is based solely on the three-month span between vaccination and Petitioner's first treatment for her shoulder injury (ECF 21 at *5). But as I have stated many times in other decisions, it is not uncommon for SIRVA claimants to delay seeking care in the hope that the pain will resolve on its own. *Tully v. Sec'y of Health & Human Servs.*, No. 21-1998V, 2024 WL 4533515 (Fed. Cl. Spec. Mstr. Sept. 20, 2024) (finding onset occurred within 48 hours although claimant did not seek care for two and a half months); *Diaz v. Sec'y of Health & Human Servs.*, 20-1003V, 2023 WL 8440873, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2023) (finding onset was within 48 hours where the petitioner delayed seeking care for over three months after vaccination); *Buck v. Sec'y of Health & Human Servs.*, No. 19-1301V, 2023 WL 6213423, at *7 (Fed. Cl. Spec. Mstr. Aug. 23, 2023) (finding onset of pain occurred within 48 hours where the petitioner did not seek care for over three months and noting that a delay in seeking care is relevant to onset, but not dispositive).

In this case, Petitioner had additional compelling reasons for the treatment delay: she had moved to the United States from another country less than a year before vaccination, and a language barrier further complicated her ability to seek medical treatment. When Petitioner did seek care, she consistently related her shoulder pain to vaccination and described pain that began "right after" vaccination, and tenderness and difficult with motion the following day. Ex. 3 at 8; Ex. 6 at 43. And there is nothing in the record suggesting a later onset.

## Scheduling Order

- **Petitioner shall file, by no later than <u>Friday, April 24, 2026</u>, a status report providing an update on the parties' discussions.**

- **Respondent shall file, by no later than <u>Friday, April 24, 2026</u>, a status report indicating whether he wishes to file an amended Rule 4(c) Report and, if so, proposing a deadline for it.**

    **IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master